IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

YELENA NIKOLAYCHUK, Personal ) Civil No.: 3:17-cv-00921-JE
Representative of the Estate of Igor )
Nikolaychuk, )
                 Plaintiff, ) OPINION AND ORDER
)
     v. )
)
)
NATIONAL CASUALTY COMPANY, )
)
                 Defendant. )
_____ )

    Ivan S. Zackheim
    1750 SW Skyline Blvd
    Suite 220
    Portland, OR 97221

            Attorney for Plaintiff

    Adam E. Jones
    Selman Breitman LLP
    111 SW 5th Ave.,
    Suite 3150
    Portland, OR 97204

            Attorney for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Yelena Nikolaychuk brings this breach of insurance contract claim on behalf of the estate of her deceased husband, Igor Nikolaychuk, against Defendant National Casualty Company. The Complaint was originally filed in Multnomah County Circuit Court for the State of Oregon. It was removed to the U.S. District Court for the District of Oregon on June 13, 2017. This Court previously denied Defendant's Fed. R. Civ. P. 12(b)(6)motion to dismiss. Now pending before the Court are the parties' cross motions for summary judgment.

For the reasons set out below, Defendant's motion for summary judgment is denied and Plaintiff's motion for partial summary judgment is denied in part and granted in part.

## **Background**

On January 31, 2016, Igor Nikolaychuk was operating a commercial 2007 Volvo semi-truck and trailer as an independent contractor for the truck's registered owner, RMI Transport, LLC. RMI was the named insured on an Uninsured/Underinsured Motorist (UM/UIM) policy issued by Defendant National Casualty. Sometime before 8:40am that morning, Mr. Nikolaychuk stopped the truck and trailer on the paved shoulder of westbound Interstate 84 near milepost 281 in Oregon for the purpose of installing tire chains as was required by Oregon Department of Transportation regulations then in effect for that location. As he was installing tire chains on the rear driver's side trailer tire, Mr. Nikolaychuk was struck and killed by an out-of-control westbound vehicle.

Plaintiff seeks underinsured motorist coverage from Defendant and thus bears the burden of establishing, as a prerequisite to coverage, that Mr. Nikolaychuk qualified as an "insured" within the meaning of the policy when the incident occurred.

The parties have stipulated to the following facts:

1) Mr. Nikolaychuk was killed by an underinsured driver while he was in a crouched position at the rearmost driver's side axle of the Volvo tractor semi-trailer, axle 5;

2) Mr. Nikolaychuk operated and used the Volvo tractor with the consent of the named insured under the subject National Casualty policy;

3) Road conditions and Oregon Department of Transportation rules required Mr. Nikolaychuk to stop and apply tire chains to the tractor and semi-trailer;

4) The underinsured driver struck and killed Mr. Nikolaychuk while losing control of her 2007 Cadillac on I-84 westbound;

5) Mr. Nikolaychuk was struck by the Cadillac while he was chaining up left axle 5.

(Def. Motion at 2-3; ¶¶1-5).

The parties also agree that the following evidence is admissible: 1) the Oregon State Police ("OSP") report and photographs surrounding OSP's investigation into the accident; 2) National Casualty policy number LTO0021394 issued to RMI for the period June 4, 2015 – 2016 (the "Policy"); 3) RMI's application for the Policy; and 4) RMI's executed "Oregon Election of Lower Limits for Uninsured Motorists Coverage" form.

In addition to the stipulated facts above, Plaintiff asserts the following:

The Volvo tractor had three axles. Axle 1 is the front most axle on the tractor. The second and third axles are behind the cab and are powered. The semi-trailer had two non-powered axles (axles 4 and 5), commonly referred to as tandem axles. OSP photos of the scene reflect that chains were installed and tightened on the driver side (left) axle 2; chaining also appears completed on passenger side (right) axle 5. Passenger side axle 2 is half draped with tire chains, and the tire is on top of a section of chains. The driver side axle 5 has not been chained but the tire is on top of a section of chains. Chaining the tractor and trailer would have involved

multiple steps that included carrying the chains to each axle, draping the chains over the tops of the tires and lining them up, moving the tractor-trailer either forward or backward the distance of one quarter to one half wheel rotation in order to create enough slack for the chains to be linked, connecting the inner and outer rails that follow the circumference of the tire and then using a hand-held "cam" wrench to remove slack from the chains. (Buxton Decl. pp. 2, 4-5)

## Discussion

Defendant moves for summary judgment on the grounds that Mr. Nikolaychuk was not an "insured" under the policy at issue. Plaintiff moves for summary judgment on this same issue, requesting a finding that Mr. Nikolaychuk was an insured. Plaintiff also moves for summary judgment on the grounds that Defendant's failure to comply with ORS 742.502(2) invalidates Defendant's claim of lower limits on the underinsured motorist coverage at issue; that there is no limitation on the amount of noneconomic damages Plaintiff can claim;[1] and that Defendant's underinsured motorist coverage is not reduced by the amount recovered from the at-fault driver's insurer.

The threshold question in this case is whether Mr. Nikolaychuk was an "insured" under the policy. Defendant advances the same argument raised in its motion to dismiss: that Mr. Nikolaychuk was not an "insured" because he was not "occupying" the vehicle. Defendant argues that the plain meaning of "occupying" and the definition of the term in the Oregon Supreme Court case *Marcilionis v. Farmers Ins. Co. of Or.,* 318 Or. 640 (Or 1994), make clear that Mr. Nikolaychuk's position crouched behind axle 5 as he attempted to chain the tractor trailer did not constitute "occupying" under either the Policy or statutory definition.

---

[1] Because Plaintiff has not yet amended her noneconomic damages claim to seek damages beyond the cap in dispute, and there has been no determination as to what, if any, damages Plaintiff is entitled, this issue is not yet ripe for decision.

Plaintiff argues that the portions of *Marcilionis* upon which Defendant relies are dicta, that the tests for occupancy set out in earlier Oregon Appeals Court decisions direct a finding that Mr. Nikolaychuk was "occupying" the vehicle; that the decision in *Sheptow v. GEICO General Insurance Co.*, 246 Or.App. 18 (2011), rev. denied, 351 Or. 761 (2012) suggests that Oregon's financial responsibility law ("FRL") should determine who an "insured" is regardless of the language of the UM/UIM statute; and that because the Policy offers only a definition of "occupancy" and not "occupying," the word "occupying" has a much broader definition than that which Defendant advocates.

## I. *Sheptow* and the FRL

Defendant argues that the FRL does not alter the more specific UM/UIM statute and *Sheptow* provides no authority to impute the "permissive user" aspect of the FRL into the UM/UIM statute. I agree. *Sheptow* dealt specifically with an interpretation of the personal injury protection ("PIP") statute. *See*, *Sheptow*, 246 Or.App. at 20. The court held that ORS 806.080(1)(b)), when applied in conjunction with ORS 742.520, expanded PIP coverage to include "all persons, who with the consent of the named insured, use the motor vehicle." *Id*. at 23 (citing ORS 806.080(1)(b). Applying *Sheptow* here would effectively eliminate a specific provision of the UM/UIM statute's definition of "insured."

In addition, the 1991 amendments to the FRL upon which the *Sheptow* court relied were in effect when *Marcilionis* was issued and the court made no reference to it in arriving at its decision. Accordingly, I conclude that the FRL does not operate here to amend the definition of "insured" under Oregon's UM/UIM statute.

## II. *Marcilionis* and the Definition of "Occupy"

In interpreting an insurance policy under Oregon law, "the primary and governing rule of

the construction of insurance contracts is to ascertain the intention of the parties." *Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Oregon*, 313 Or. 464, 469 (1992)(citations and quotations omitted). Courts must determine the intention of the parties based on the terms and conditions of the insurance policy. *Id.* (*citing* ORS 742.016). The court begins with the words of the policy, "applying any definitions that are supplied by the policy itself and otherwise presuming that words have their plain, ordinary meanings." *Tualatin Valley Hous. Partners v. Truck Ins. Exch.*, 208 Or.App. 155, 159–60 (2006) (citing *Hoffman*, 313 Or. at 469–70).

Defendant argues that Mr. Nikolaychuk was not an "insured" for purposes of underinsured motorist coverage because he was not "occupying" a covered auto at the time he was struck and killed. The UM/UIM policy provision at issue sets out that an "insured" is defined as "[a]nyone 'occupying' a covered 'auto'. . . ." (Pl.'s Motion for Summary Judgment, Ex. 1 p. 4, ¶ B (2)(a)). "Occupancy" is defined in the policy's UIM Endorsement as "in, upon, getting in, on, out or off." (Id. at p. 7, ¶ F (4))

Under Oregon law, an auto policy must provide UM/UIM coverage no less favorable than the statutorily defined minimums of such coverage. *See, e.g.*, *Marcilionis v. Farmers Ins. Co. of Or.*, 318 Or. at 644 (citing ORS 742.504). Under ORS 742.504(2)(c)(C), an "insured" for UM/UIM coverage includes "any other person while occupying an insured vehicle . . . ." The statute defines "occupying" as "in or upon or entering into or alighting from." ORS 742.504(2)(f).

**A. The Definitions**

In *Marcilionis*, the plaintiff sought uninsured motorist coverage for injuries he sustained when he was struck by a motorist while picking up his car keys from the middle of the street. *Marcilionis*, 318 Or. at 642. The plaintiff was driving his uncle's car and pulled over and stopped

when he noticed a woman standing at the curb waving at him. The plaintiff, who was deaf, was unsuccessful in communicating with the woman. The woman then proceeded to enter the car, remove the keys from the ignition, exit the car through the passenger side door, close the door and run down the street. Plaintiff exited the car and chased the woman down the street. When he grabbed her not far from the rear of the car, she threw the keys. The plaintiff then searched for and found the keys in the street and was struck and injured by a car while he was in the act of picking up the keys from the street. *Id.*

The Oregon Supreme Court was faced with the question of whether the plaintiff was "occupying" his uncle's car when he was struck and injured. The Farmers Insurance policy at issue defined "occupying" as "in, on, getting into or out of." The court determined that there was no basis for finding a difference between the statutory language and the Farmers' policy language and, therefore, "a determination of the meaning of 'occupying' in [the statute] will also be a determination of the meaning of that term in the [Farmers] policy." *Marcilionis*, 318 Or. at 644.

The court explained that "[w]hen examining the text of a statute, one aid of interpretation that this court will apply is that 'words of common usage typically should be given their plain, natural, and ordinary meaning.'" *Id.* at 645 (quoting *PGE v. Bureau of Labor and Industries,* 317 Or. 606, 610 (1993)). Concluding that the words that defined "occupy" in the statute were words of common usage, the court then, using dictionary definitions, set out common meanings for "in," "upon," "entering into," and "alighting from." *Id.* at 645-646.

After offering definitions of these terms, the court concluded, "[i]n the present case, plaintiff was in the middle of the street picking up his keys when he was struck and injured by the uninsured motorist. Applying the unambiguous text of the statute, plaintiff was not "in,"

"upon," "entering into," or "alighting from" his uncle's car when he was struck and injured." *Id.* at 646.

Plaintiff argues that the definitions set out in *Marcilionis* upon which Defendant relies are dicta. Plaintiff contends that the Oregon Appellate Court's decision in *Mackie v. Unigard Insurance, Co.,* 90 Or.App. 500 (1988), which set out a "process" or "course of conduct" test for defining "occupying" should inform the outcome in this case.

In *Mackie*, the plaintiff was retrieving items from the trunk of her vehicle when she was struck by a car driven by an uninsured motorist. The plaintiff sought UM coverage for injuries she sustained and the Court of Appeals was required to address the issue of whether plaintiff was "occupying" her vehicle when she was struck. *Id.* at 502. The court, relying on its decision in *State Farm Ins. Co. v. Berg,* 70 Or.App. 410 (1984), *rev. den.* 298 Or. 553 (1985), applied the test that "a person remains an 'occupant' of a vehicle until the person has completed all acts reasonably expected to be performed under the circumstances or reasonably incidental to the disembarking process and commences a new course of conduct."
*Mackie,* 90 Or. App. at 503(quoting *Berg*, 70 Or.App. at 415)(internal quotations omitted). The court concluded that opening the trunk and removing items was "a course of conduct reasonably incidental to leaving and alighting from the car" and, therefore, plaintiff was "occupying" her car when she was struck. *Id.* at 505.

*Mackie* and *Berg* were not explicitly overruled by the Oregon Supreme Court's decision in *Marcilionis*. However, in deciding *Marcilionis,* the Oregon Supreme Court reversed the Court of Appeals' decision which relied on the *Mackie* "course of conduct" test. *See, Marcilionis v. Farmers Ins. Co.,* 121 Or.App. 108, 112 (1993). Both the Policy at issue here and the statute clearly signify what is intended by the term "occupying" – the statute through its definition of

that term and the policy through its definition of "occupancy." The words used to define "occupying" are thus controlling. The Supreme Court's application of a literal "plain meaning" approach to interpreting those definitional words also controls. However, applying *Marcilionis* to the facts of this case does not lead to the result advanced by Defendant.

*Marcilionis* plainly dealt with an injured party who was several feet away from the covered vehicle. I have not found, and the parties have not cited, any Oregon Supreme Court or Appellate Court case since *Marcilionis* where the interpretation of "occupying" involved a plaintiff touching or in close proximity to the vehicle when injured. *See Takata v. State Farm Mut. Auto. Ins. Co.*, 217 Or. App. 454, 457 (2008) (plaintiff walking away from and three-quarters of the way across a two-lane road from vehicle when struck by a cyclist not "occupying" vehicle); *Mut. of Enumclaw Ins. Co. v. Payne*, 164 Or. App. 664, 666–67, 670 (1999)(plaintiff in middle of roadway directing traffic and completely out of physical contact with vehicle not "occupying" vehicle); *Carrigan v. State Farm Mut. Auto. Ins. Co.*, 326 Or. 97, 99–100 (1997) reversed on other grounds, *Carrigan v. State Farm Mut. Auto. Ins. Co.,* 326 Or. 97, 99 (1997) (plaintiff 30 feet away from vehicle when shot and injured not "occupying" vehicle).

Here, Mr. Nikolaychuk alighted from his truck cab, retrieved tire chains and engaged in the process of chaining the appropriate tires. This involved multiple repetitions of laying the chains over the tires, adjusting the chains, reaching around the tires, re-entering the cab, driving the tractor-trailer forward or backward, again alighting from the cab and moving around and under the tractor cab and trailer box to tighten the chains. Mr. Nikolaychuk was struck and killed while he was chaining up a tire in a crouched position at the rearmost driver side axle. He was in a proximate position to the vehicle and the act of chaining up the tires would have required him to be in direct contact with the vehicle. Under these circumstances, a trier of fact

could only conclude that Mr. Nikolaychuk was "upon" the vehicle when he was struck and killed.

The *Marcilionis* court noted that "upon" commonly means "on" and "on," in turn, is commonly used to indicate "position over and in contact with that which supports from beneath."*Marcilionis*, 318 Or. at 645(quoting *Webster's Third New International Dictionary* 1574 (1976)(internal quotations omitted).Webster's also defines "on" as indicating "contact and support from elsewhere than beneath (a fly [on] the ceiling)(hanging [on] the wall)" or "location closely adjoining something (a town situated [on] the river)." *Webster's Third New International Dictionary* 1574 (1986). These other common meanings of the word "on" (and thus "upon"), while not necessary to reach the conclusion that Mr. Nikolaychuk was "upon" the vehicle, serve to reinforce that conclusion.

Because a reasonable trier of fact could only conclude that Mr. Nikolaychuk was "upon" the vehicle at the time of the incident, it follows that, as a matter of law, Mr. Nikolaychuk was "occupying" the vehicle. He was, therefore, an "insured" under the Defendant's UM/UIM policy provisions. Accordingly, Defendant's motion is denied and Plaintiff's motion at to this issue is granted.

### III. **Application of ORS 742.502(2)(a) – the "Stacking" Requirement**

In her motion for summary judgment, Plaintiff argues that under the 2015 amendment to ORS 742.502(2)(a):

> Underinsurance coverage must be equal to the sums that the insured or the heirs or legal representative of the insured is legally entitled to recover as damages for bodily injury or death that is caused by accident and that arises out of owning, maintaining or using an uninsured vehicle up to the limits of the uninsured motorist coverage.

This amendment applied to motor vehicle liability policies that were issued or renewed on or after the effective date of the Act – January 1, 2016. *Id.* Plaintiff argues that because the Volvo tractor Mr. Nikolaychuk was driving was added to the Policy after January 1, 2016, the amendment operates to prevent the underinsured motorist coverage from being reduced by the amount recovered from the at-fault driver's insurer.

Defendant responds that the face of the Policy and the Oregon Supreme Court's decision in *Pierce v. Allstate Ins. Co.,* 316 Or. 31 (1993) demonstrate that the 2015 amendment does not apply here. I agree. The undisputed evidence shows that the policy was issued in June 2015 and provided for a policy period from June 4, 2015 to June 4, 2016. (Jones Decl., Dkt. #6, Ex. 1 at p.13). It is also undisputed that the Volvo tractor was an addition to the Policy on January 4, 2016. (Pl.'s Motion, Ex. 1 at p.8).

In *Pierce*, the court held that the addition of a vehicle to a policy does not constitute "issuance" of a policy within the meaning of ORS 742.502(2). *Pierce*, 316 Or. at 35-36. In light of this court's unequivocal holding, I conclude that, as a matter of law, that the 2015 amendments to ORS 742.502(2)(a) do not apply to the Policy in this case. Accordingly, Plaintiff's motion for summary judgment on this issue is denied. Although the Plaintiff's motion is denied, the Court has not been called upon to decide and is not deciding the specific issue of whether Defendant's obligations under the Policy are to be reduced by any amounts paid by the at-fault driver or her insurer if the total damages exceed the combined limits of both policies.

### IV. Compliance with ORS 742.502(2) in the Selection of Lower UIM Limits

Plaintiff contends that a failure to comply with the requirements of ORS 742.502(2) for electing lower limits for UM/UIM coverage invalidates Defendant's claim of lower limits.

ORS 742.502(2)(b) directs that:

> If a named insured elects lower [UM/UIM] limits, the named insured shall sign a statement to elect lower limits within 60 days after the time the named insured makes the election. The statement must acknowledge that a named insured was offered uninsured motorist coverage with the limits equal to those for bodily injury liability. The statement must have a brief summary that is not part of the insurance contract and that describes what uninsured motorist coverage provides and what the underinsured coverage provides. The summary must also state the price for coverage with limits equal to the named insured's bodily injury liability limits and the price for coverage with the lower limits the named insured requested. * * *

As Plaintiff points out, the "Oregon Election of Lower Limits for Uninsured Motorists Coverage" form signed by the named insured, RMI, and purportedly electing a combined single limit of $100,000 of Bodily Injury Uninsured Motorists Coverage does not state the price for either coverage with limits equal to bodily injury liability limit or coverage at the lower elected limits. (Pl. Motion, Ex. 3, p.3). Plaintiff argues that the result of this failure to comply with the statute is that the named insured's election fails and coverage is imputed at the higher $1,000,000 limit.

With the exception discussed below, the Oregon cases upon which Plaintiff relies in support of her argument all involved an insurer's failure to offer coverage equal to the liability limits of the policies and all but one involved plaintiffs who were themselves the named insureds and were seeking the higher UM/UIM coverage limits. Furthermore, all of the cases were decided when the statutes provided for required minimum limits for UM/UIM coverage and mandated that insurers offer insureds the *option to purchase increased coverage* up to limits equal to the liability limits. *See White v. Safeco Ins. Co. of Am.*, 68 Or. App. 11, 13 (1984); *Blizzard v. State Farm Auto. Ins. Co.*, 86 Or. App. 56, 58 (1987); *Savage v. Grange Mut. Ins. Co.*, 158 Or. App. 86, 88 (1999) *Beck v. Powell*, 113 Or. App. 318, 320 (1992); *Buccino v. California Cas. Ins. Co.*, 159 Or. App. 654, 656 (1999). Thus, any remedy suggested by these cases is unhelpful, and more importantly, nonbinding, on this court.

At oral argument, Plaintiff argued that the Oregon appellate decision in *Ajir v. Buell*, 270 Or.App. 575 (2015) directs that the remedy for an invalid UM/UIM election is an automatic increase of the coverage limits to those equal to liability limits on the policy. Although this case was decided under the current statutory framework regarding the requirements for election of UM/UIM coverage, it is otherwise too factually distinct to provide any authority over the case before this Court.

In *Ajir*, the plaintiff was a Clackamas County deputy sheriff who was injured in a collision while driving a county vehicle. *Id.* at 578. Clackamas County was self-insured for $500,000 in motor vehicle liability insurance and self-insured for UM/UIM coverage with a purported limit of $25,000. Plaintiff alleged that the county had $500,000 in UM/UIM coverage available to compensate him for damages in excess of those covered by the other driver's policy.

The county asserted it had only $25,000 in coverage, relying on an electronic document created by its Risk Manager and maintained on his computer. The form was unsigned and otherwise failed to meet almost all other requirements under ORS 742.502(2)(b). *Id.* at 578-579. There was no evidence that a printed version of the purported election existed before litigation. *Id.* at 579.

Here, the named insured, RMI, signed the election form, initialed a section acknowledging it was offered UM/UIM limits equal to the policy's liability limits, initialed the line selecting $100,000 Combined Single Limit, and the form contained the requisite summary that describes what UM and UIM coverage provides. "[T]he legislature's purpose in creating compulsory uninsured motorist coverage was to provide protection for the automobile insurance *policyholder* against the risk of inadequate compensation for injuries or death caused by the negligence of financially irresponsible motorists." *Vega v. Farmers Ins. Co. of Oregon*, 323 Or.

291, 305 (1996)(citations and internal quotations omitted)(emphasis added). The failure of the Defendant to include on the election form the premiums for the varying levels of coverage, while contrary to the statute's requirements, should not be construed to negate what was clearly the policy holder's "deliberate and informed choice to reject UM/UIM limits equal to liability limits." *Ajir v. Buell*, 270 Or. App. at 582 n.5.

Under the circumstances here, the Court declines to reform a signed contract between Defendant and its policy holder so as to impute the higher level of UM/UIM coverage limits requested by Plaintiff. Accordingly, Plaintiff's motion as to this issue is denied.

## **Conclusion**

Defendant's motion for summary judgment (#29) is DENIED; Plaintiff's motion for partial summary judgment (#31) is DENIED in part and GRANTED in part.

DATED this 16th day of August, 2018.

               /s/ John Jelderks
               John Jelderks
               U.S. Magistrate Judge